# FILED

APR 0 3 2023  JB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

23CR195
Judge Tharp, Jr.
Magistrate McShain
Randomly Assigned CAT 3

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. |
| ) | |
| v. ) | Violations: Title 18, United |
| ) | States Code, Sections 1343 |
| ) | and 3147(1) |
| ADAM R. OLIVA ) | |
| ) | **UNDER SEAL** |

## COUNT ONE

The SPECIAL MAY 2022 GRAND JURY charges:

1.     At times relevant to this indictment:

a.     Defendant ADAM R. OLIVA held himself out as a professional who provided tax-related and other financial services to various clients. Defendant engaged in this purported business under various names, including the Oliva Group, LLC, the Oliva Tax Group, LLC, and the Oliva Tax & Auditing Group, LLC.

2.     Beginning no later than in or around September 2020, and continuing through at least in or around October 2022,

ADAM R. OLIVA,

defendant herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.     It was part of the scheme that defendant ADAM R. OLIVA fraudulently induced and attempted to induce various investors, including Investors CM, MS, DW, and HA, to provide him with money for the purpose of using the money to fund short-

term loans made to third-party borrowers who were his purported clients when, in reality, defendant intended to use and used the money for his personal purposes.

4.     It was further part of the scheme that defendant ADAM R. OLIVA falsely represented to investors that he engaged in the business of lending money to individuals and entities that engaged in various businesses, including the distribution of medicinal marijuana, and that these individuals and businesses were reliable borrowers who had previously repaid short-term loans.

5.     It was further part of the scheme that defendant ADAM R. OLIVA falsely represented to investors that they could receive returns ranging from approximately 10% to 20% on their investments by providing him with money to fund the short-term loans being made to his purported clients.

6.     It was further part of the scheme that defendant ADAM R. OLIVA created the names of businesses and owners for those businesses to list as the borrowers for these short-term loans for the purpose of falsely leading potential investors to believe he had clients who were seeking such loans.

7.     It was further part of the scheme that, in connection with these fraudulent loans, defendant ADAM R. OLIVA provided investors with fictitious promissory notes that falsely reflected a promise by one of defendant's purported clients to pay a set amount of money by a date certain.

8.     It was further part of the scheme that defendant ADAM R. OLIVA provided investors with fictitious bank statements in order to make it falsely appear

that the clients who were purportedly borrowing money were reliable borrowers and had previously paid back loans.

9. It was further part of the scheme that defendant ADAM R. OLIVA used the money provided to him by investors for his personal purposes and to repay other investors.

10. It was further part of the scheme that defendant ADAM R. OLIVA falsely represented to investors that certain payments made to the investor represented the payment of principal or interest on their investment when, in fact, defendant used money fraudulently obtained from other investors or loans obtained from others to make these payments to investors.

11. It was further part of the scheme that defendant ADAM R. OLIVA misled and lulled investors into believing that the principal and interest on their investments would be repaid to them by, among other means, sending fictitious messages purportedly from financial institutions falsely reflecting that a wire transfer to the investor was being processed or by providing the investor with a check drawn on a previously closed account.

### Investor CM

12. It was further part of the scheme that, on or about May 3, 2021, defendant ADAM R. OLIVA caused Investor CM to provide him with approximately $100,000 under the false pretense that the money would be used by defendant to fund a short-term loan to a third-party borrower who was defendant's client with a return

- 3 -

of approximately 20% when, in fact, defendant intended to use and used the money for his personal purposes.

13.     It was further part of the scheme that, on or about September 23, 2020, for the purpose of leading Investor CM to believe that defendant had successfully provided short-term loans to clients in the past, defendant ADAM R. OLIVA emailed a fictitious promissory note, dated January 16, 2020, falsely reflecting that the owner of a business named Hang Rite Sports LLC in Franklin Park, Illinois, had agreed to pay $275,000 to defendant and the Oliva Group, LLC by May 19, 2020, as part of a short-term loan issued by defendant even though defendant knew that there was no such business and no such agreement to repay that amount to the Oliva Group LLC.

14.     It was further part of the scheme that, on or about June 3, 2021, in connection with Investor CM's investment, defendant ADAM R. OLIVA sent Investor CM a fictitious promissory note, dated May 3, 2021, reflecting that Individual ZG owned and had agreed on behalf of a business named Garden of Green, LLC in Chicago to pay $120,000 by September 24, 2021, to an entity connected to Investor CM, even though defendant knew that there was no such business and Individual ZG had not agreed to pay any such amount to Investor CM.

15.     It was further part of the scheme that, on or about September 11, 2022, for the purpose of lulling and falsely leading Investor CM to believe he was receiving a return on his investment, defendant ADAM R. OLIVA provided Investor CM with a check for $120,000 drawn on an account at Citibank that had been closed for a number of years.

- 4 -

16. It was further part of the scheme that, on or about September 27, 2022, for the purpose of lulling and falsely leading Investor CM to believe he was receiving a return on his investment, defendant ADAM R. OLIVA forwarded a fictitious text message purportedly emanating from BMO Harris Bank to Investor CM falsely reflecting that $120,000 was in the process of being transferred to an account connected to Investor CM, when defendant knew that the message was fictitious and no such transfer was being processed by BMO Harris Bank.

*Investor MS*

17. It was further part of the scheme that, between on or about August 31, 2021 and February 18, 2022, defendant ADAM R. OLIVA caused Investor MS to provide him with a total of approximately $125,000 under the false pretense that the money would be used by defendant to fund short-term loans to third-party borrowers who were defendant's clients with returns ranging from approximately 10% to 19.5% when, in fact, defendant intended to use and used the money for his personal purposes.

18. It was further part of the scheme that, on or about August 30, 2021, for the purpose of falsely leading Investor MS to believe that a third-party borrower had repaid earlier loans, defendant ADAM R. OLIVA emailed a fictitious promissory note to Investor MS signed by the purported owner of Kind Bakeries in Franklin Park, Illinois, and falsely represented to Investor MS that "I have secured three loans for [the owner of Kind Bakeries] in the last two years and he's always paid them back on

time without any issues," even though defendant knew that there was no such business and no agreement to repay any amount.

19.    It was further part of the scheme that, on or about September 23, 2022, for the purpose of lulling and falsely leading Investor MS to believe she was receiving a return on her investment, defendant ADAM R. OLIVA forwarded a fictitious text message purportedly emanating from Chase Bank to Investor MS falsely reflecting that $10,000 was in the process of being transferred to Investor MS's account when defendant knew that the message was fictitious and no such transfer was being processed by Chase Bank.

### *Investor DW*

20.    It was further part of the scheme that, on or about August 20, 2021, defendant ADAM R. OLIVA caused Investor DW to provide him with $100,000 under the false pretense that the money would be used by defendant to fund a short-term loan to a third-party borrower who was defendant's client with a return of approximately 19% when, in fact, defendant intended to use and used the money for his personal purposes.

21.    It was further part of the scheme that, on or about August 18, 2021, for the purpose of falsely leading Investor DW to believe that the third-party borrower had repaid earlier loans, defendant ADAM R. OLIVA emailed a fictitious promissory note to Investor DW signed by the purported owner of Kind Bakeries in Franklin Park, and falsely represented to Investor DW that "I have secured three loans for [the owner of Kind Bakeries] in the last two years and he's always paid them back on time

without any issues," even though defendant knew that there was no such business and no agreement to repay any amount. Defendant also attached a fictitious bank statement for an account held in the name of the Oliva Group, LLC to reflect proof of payment by the owner of Kind Bakeries even though no such payment had been made to defendant.

22.     It was further part of the scheme that, on or about February 17, 2022, defendant ADAM R. OLIVA emailed another fictitious promissory note to Investor DW signed by the owner of Kind Bakeries in Franklin Park, Illinois in which the owner promised to pay $119,000 to Investor DW by October 29, 2022, even though defendant knew that there was no such business and no agreement to repay such an amount to Investor DW.

23.     It was further part of the scheme that, on or about May 23, 2022, defendant ADAM R. OLIVA texted a message to Investor DW asking if there was "[a]ny chance you'd like to do a small 75 day loan" with a "[c]lient offering 7-9%," even though defendant knew that there was no such client looking for a loan and defendant intended to use any money provided by Investor DW for his personal purposes, including to repay other investors.

*Investor HA*

24.     It was further part of the scheme that, between on or about March 28, 2022 and May 16, 2022, defendant ADAM R. OLIVA caused Investor HA to provide him with approximately $105,000 under the false pretense that the money would be used by defendant to fund short-term loans to third-party borrowers who were

defendant's clients with returns ranging from approximately 11% to 15% return when, in fact, defendant intended to use and used the money for his personal purposes.

25. It was further part of the scheme that, on or about March 28, 2022, defendant ADAM R. OLIVA emailed a fictitious promissory note to Investor HA signed by the purported owner of Garden of Green in Palatine, Illinois, in connection with a purported loan of $60,000 to a third-party borrower who was defendant's client even though defendant knew that there was no such business and no agreement to repay such an amount to Investor HA.

26. It was further part of the scheme that, on or about April 1, 2022, defendant ADAM R. OLIVA sent a text message to Investor HA falsely representing that another client was seeking to enter into a short-term loan arrangement. The text message provided, in part, as follows:

> In January 2022 my firm secured a Federal PPP loan for a client and his business in the amount of $420K. Yesterday we were notified that the loan is being paid directly to us and we'd be responsible to distribute the funds to them. The government is saying he'll get the deposit roughly between June 23-30th. My client is looking to borrow against his approved loan and he's looking for $100K at 11% (there's roughly $20k left). I'm happy to put you into this one as well if you're interested in making a few bucks. You don't have to do the full amount, you could do any amount you'd like. If this interests you, please let me know.

27. It was further part of the scheme that, on or about April 5, 2022, after Investor HA expressed interested in providing another $20,000 to defendant for another short-term loan, defendant ADAM R. OLIVA emailed a fictitious promissory note to Investor HA signed by the purported owner of Advanced Tree Care of Illinois,

even though defendant knew that there was no such business and no agreement to repay such an amount to Investor HA.

28. It was further part of the scheme that, on or about May 13, 2022, defendant sent a text message in Investor HA falsely represented that another of defendant's clients was seeking to enter into a short-term loan arrangement. The text message provided, in part, as follows:

> We have a lot of awesome short term deals that will get you between 12-19% for 70-90 days. The IRS is sending checks for the PPP loans and clients are looking to borrow. Please please [sic] let me know if you're interested.

29. It was further part of the scheme that, on or about May 16, 2022, after Investor HA expressed interested in providing $25,000 to defendant for another short-term loan, defendant ADAM R. OLIVA emailed a fictitious promissory note to Investor HA signed by the purported owner of Kind Bakeries in Franklin Park, even though defendant knew that there was no such business and no agreement to repay such an amount to Investor HA.

30. It was further part of the scheme that, on or about September 27, 2022, defendant ADAM R. OLIVA forwarded a fictitious text message purportedly emanating from Chase Bank falsely reflecting that $10,000 was in the process of being transferred to Investor HA's account when defendant knew that the message was fictitious and no such transfer was being processed by Chase Bank.

### Overall Amounts Fraudulently Obtained by Defendant

31. It was further part of the scheme that defendant ADAM R. OLIVA obtained in excess of $800,000 from various investors as part of the scheme.

32.     It was further part of the scheme that defendant ADAM R. OLIVA concealed, misrepresented and hid, and caused to be concealed, misrepresented, and hidden, the existence of the scheme, the purposes of the scheme, and the acts done in furtherance of the scheme.

33.     On or about May 3, 2021 in the Northern District of Illinois, Eastern Division, and elsewhere,

ADAM R. OLIVA,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate transfer of funds through the Fedwire Funds Service to an account controlled by defendant at BMO Harris Bank in the amount of approximately $100,000, representing money paid by Investor CM to defendant for use in funding a short-term loan to a third-party borrower;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL MAY 2022 GRAND JURY further charges:

1.      The allegations of paragraphs one through thirty-two of Count One are incorporated here.

2.      On or about August 20, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ADAM R. OLIVA,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, namely, an intrabank transfer of funds at BMO Harris Bank to an account controlled by defendant in the amount of approximately $100,000, representing money paid by Investor DW to defendant for use in funding a short-term loan to a third-party borrower;

In violation of Title 18, United States Code, Section 1343.

- 11 -

## COUNT THREE

The SPECIAL MAY 2022 GRAND JURY further charges:

1.     The allegations of paragraphs one through thirty-two of Count One are incorporated here.

2.     On or about August 31, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ADAM R. OLIVA,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate transfer of funds through the Fedwire Funds Service to an account controlled by defendant at BMO Harris Bank in the amount of approximately $35,000, representing money paid by Investor MS to defendant for use in funding a short-term loan to a third-party borrower;

In violation of Title 18, United States Code, Section 1343.

<u>COUNT FOUR</u>

The SPECIAL MAY 2022 GRAND JURY further charges:

1.      The allegations of paragraphs one through thirty-two of Count One are incorporated here.

2.      On or about March 28, 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

ADAM R. OLIVA,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate transfer of funds through the Fedwire Funds Service to an account controlled by defendant at BMO Harris Bank in the amount of approximately $60,000, representing money paid by Investor HA to defendant for use in funding a short-term loan to a third-party borrower;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL MAY 2022 GRAND JURY further charges:

1.      The allegations of paragraphs one through thirty-two of Count One are incorporated here.

2.      On or about April 12, 2022, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ADAM R. OLIVA,

Defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, namely, a transfer of funds from a PayPal account controlled by defendant to defendant's account at BMO Harris Bank in the amount of approximately $29,985, representing in part money paid by Investor HA to defendant for use in funding a short-term loan to a third-party borrower;

In violation of Title 18, United States Code, Section 1343, and committed this offense while on release pursuant to Title 18, United States Code, Chapter 207, in violation of Title 18, United States Code, Section 3147(1).

A TRUE BILL:

_____

FOREPERSON


_____

ACTING UNITED STATES ATTORNEY